IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DIVISION

| | |
|---|---|
| FRANCISCO MACIAS,<br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, COMMISSIONER OF<br>THE SOCIAL SECURITY<br>ADMINISTRATION,<br>    Defendant. | §<br>§<br>§<br>§   EP-20-CV-00145-ATB<br>§<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff Francisco Macias ("Macias") appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court orders that the Commissioner's decision be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

On September 7, 2017, Macias filed an application for SSI, alleging a disability onset date of March 6, 2015. (R. 10). Macias's application was denied initially on March 22, 2018, and upon reconsideration on July 13, 2018. (R. 10). An Administrative Law Judge ("ALJ") held a hearing on March 29, 2019. (R. 27-44). At the hearing, the ALJ granted Macias's motion to amend his onset date from March 6, 2015, to September 7, 2017. (R. 10, 31). The ALJ issued a decision

("Decision") on May 22, 2019, finding that Macias was not disabled. (R. 21). On April 2, 2020, the Appeals Council denied Macias's request for review of the ALJ's Decision. (R. 2-5).

## II.     ISSUE

Plaintiff presents the following issue for review: whether the "ALJ's RFC [d]etermination is [n]ot [s]upported by [s]ubstantial [e]vidence because the ALJ disregarded the diagnosis of Opioid Abuse Disorder[] Severe, Alcohol Abuse Disorder[,] and Chronic Liver Disease." (ECF No. 22, p. 2).

## III.    DISCUSSION

### a.     Standard of Review

This Court's review is limited to a determination of whether the Commissioner's Decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272 (citation and internal quotes omitted). The Commissioner's findings will be upheld if supported by substantial evidence. *Id.* A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (citation and internal quotes omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the

evidence weighs against the Commissioner's Decision. *Masterson*, 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (citation and internal quotes omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

    **b.**    **Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520(a)(4). Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical Vocational Guidelines of the regulations, by vocational expert ("VE") testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). Once the Commissioner makes the requisite showing at step five, the burden shifts back to the claimant to rebut the finding that there are jobs that exist in significant numbers that the claimant could perform. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

In the present case, the ALJ found that Macias "ha[d] not engaged in substantial gainful activity since September 7, 2017, the application date." (R. 12). At step two, the ALJ found that Macias "has the following severe impairments: lumbar degenerative disc disease, major depressive disorder, anxiety, and an anti-social personality disorder." (R. 12). At step three, the ALJ found

that Macias did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 13).

> Before proceeding to step four, the ALJ found that Macias:
>
> has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except that the claimant is limited to simple, routine, and repetitive tasks, defined as unskilled work at no more than a specific vocational preparation of two.  The claimant is limited to occasional changes in the routine work setting, no interaction with the public, and superficial interaction with co-workers.

(R. 15).  At step four, the ALJ determined that Macias had no past relevant work.  (R. 19).  Subsequently, at step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  (R. 20).  Accordingly, the ALJ found that Macias was not disabled within the meaning of the Social Security Act from September 7, 2017, through the Decision date.  (R. 21).

### c.   Analysis

#### 1.   *The ALJ Properly Considered Macias's Substance Abuse and Chronic Liver Disease*

Macias argues that "[t]he ALJ's RFC [d]etermination is [n]ot [s]upported by [s]ubstantial [e]vidence because the ALJ disregarded the diagnosis of Opioid Abuse Disorder[] Severe, Alcohol Abuse Disorder and Chronic Liver Disease."  (ECF No. 22, p. 2).  Further, Macias contends that "[t]he objective medical evidence establishes that Macias is fully disabled and cannot perform medium work due to his severe mental health impairments and his chronic liver disease."  (*Id.*).

To support this contention, Macias cites to medical records from Emergence Health Network ("EHN"), Dr. Sergio Rodarte, Dr. Jesus Diaz, FNP Karina Mosier, and Dr. Roberta Herman.  In response, the Commissioner argues that "the Commissioner fully discussed these impairments, finding [Macias's] alcohol and drug abuse to be non-severe impairments . . . [and

4

that] the ALJ discussed [Macias's] non-severe chronic liver disease (hepatitis C) in the [R]ecord." (ECF No. 26, p. 5) (citing R. 12-13).

A claimant's RFC is "the most [the claimant] can still do despite [their] limitations." 20 C.F.R. § 416.945(a)(1).  The responsibility to determine the claimant's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In making this determination, the ALJ must consider all the relevant medical and other evidence and determine the claimant's abilities despite his or her physical and mental limitations.  *See* 20 C.F.R. 416.945(a)(3).  The ALJ must consider the limiting effects of an individual's impairments, even those that are not severe, and any related symptoms.  *See* 20 C.F.R. § 416.945(e).  The relative weight to be given to the evidence is within the ALJ's discretion.  *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (per curiam).  "The ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record."  *Bessey v. Berryhill*, 1:18-CV-000078-AWA, 2019 WL 1431599, at *4 (W.D. Tex. Mar. 29, 2019); *see Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

### A.  *Opioid Abuse Disorder*

Macias argues that the "the ALJ disregarded the diagnosis of Opioid Abuse Disorder, Severe . . . ."  (ECF No. 22, p. 2).  To support this contention, Macias notes that "[o]n June . . . 2016, EHN diagnosed Macias with Opioid Use Disorder, Severe."  (*Id.* at p. 3) (citing (R. 491, 787, 902)).[1]  Further, Macias asserts that "[o]n November 2018, EHN again diagnosed Macias with . . . Opioid Use Disorder, Severe . . . . (*Id.*) (citing (R. 1545)).

It is the province of the ALJ to weigh competing medical opinions.  *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) ("[T]he determination of residual functional capacity is the

---

[1] Contrary to Macias's contention, the Court notes that the Record indicates that the EHN diagnosed Macias with opioid use disorder, severe on July 13, 2016 (R. 491, 902), and November 9, 2017 (R. 787), with an *onset* date of June 8, 2016.

sole responsibility of the ALJ."). "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson*, 309 F.3d at 272 (citation and internal quotes omitted).

In the instant case, the ALJ noted that treatment records indicated that Macias's last use of heroin was in February 2015. (R. 13) (citing (R. 273)). Further, the ALJ noted that Macias started Methadone therapy in 2016 but also noted that Macias reported two or three relapses with heroin after starting Methadone. (R. 13) (R. 281, 646)). However, by Macias's psychological consultative examination in early 2018, the ALJ found that Macias "reported a history of marijuana, heroin, and pill use, but also reported that he had not used these substances in more than a year." (R. 13). As a result, the examiner diagnosed opioid disorder in sustained remission. (R. 13) (citing (R. 761)). In April of 2018, Macias reported that he had completed his methadone taper. (R. 13) (citing R. 1304)). Further, the ALJ noted that Macias "stated that he ha[d] urges to use drugs and alcohol, but refrain[ed] from doing so." (R. 13) (citing R. 210)). Moreover, the ALJ found that "urinalyses since the alleged onset date were generally negative." (R. 13) (citing (R. 1402)). Therefore, the ALJ concluded that such evidence demonstrated that Macias's opioid abuse had not resulted in work related limitations and was a non-severe impairment. (R. 13). The ALJ noted that, even though non-severe, "[n]evertheless, any limitations potentially attributable to these impairments are accounted for in the residual functional capacity, below." (R. 13).

In sum, the Court finds that the ALJ did not disregard Macias's Opioid Abuse Disorder. Instead, the ALJ weighed contrary medical evidence and fully accounted for the limitations stemming from Macias's non-severe opioid abuse. Accordingly, the Court finds no basis to overturn the ALJ's Decision on these grounds.

### B.     *Alcohol Abuse Disorder*

Macias argues that the "the ALJ disregarded the diagnosis of . . . Alcohol Abuse Disorder . . . ."  (ECF No. 22, p. 2).  To support this contention, Macias notes that EHN diagnosed Macias with "Alcohol Abuse Disorder, Severe" on multiple occasions (*Id.* at p. 3) (stating diagnoses on June and September 2016, April 4, 2017, and November 2018) (citing (R. 787, 580, 1545))[2] and "alcohol abuse, episodic" in May and August 2018 (*id.*) (citing (R. 1345, 1518)).[3]  Further, Macias notes that "[o]n May 4, 2017, EHN's Determination of Medical Necessity reflects Macias's . . . substance abuse issues . . . ."  (*Id.*) (citing (R. 597-99)).

As state above, it is the province of the ALJ to weigh competing medical opinions.  *See Taylor*, 706 F.3d at 602-03 ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ.").  "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve."  *Masterson*, 309 F.3d at 272 (citation and internal quotes omitted).

In the instant case, the ALJ noted that the treatment records indicated that Macias's last alcohol use was in March 2015.  (R. 13) (citing R. 273)).  Further, the ALJ noted that an examiner diagnosed Macias with an alcohol use disorder in early remission.  (R. 13) (citing R. 761)).  The ALJ also noted that Macias "stated that he ha[d] urges to use drugs and alcohol, but refrain[ed] from doing so."  (R. 13) (citing R. 210)).  Moreover, the ALJ found that "urinalyses since the alleged onset date were generally negative."  (R. 13) (citing (R. 1402)).  Therefore, the ALJ concluded that such evidence demonstrated that Macias's alcohol abuse had not resulted in work related limitations and was a non-severe impairment.  (R. 13).  The ALJ noted that, even

---

[2] Contrary to Macias's contention, the Court notes that the Record indicates that the EHN diagnosed Macias with "Alcohol use disorder, severe" on April 4, 2017 (R. 580), November 9, 2017 (R. 787), and November 8, 2018 (R. 1545), with an *onset* date of September 6, 2016.
[3] Contrary to Macias's contention, the Court notes that the Record indicates that the EHN diagnosed Macias with "Alcohol abuse- episodic" on March 21, 2018 (R. 1345), and July 18, 2018 (R. 1518).

though non severe, "[n]evertheless, any limitations potentially attributable to these impairments are accounted for in the residual functional capacity, below." (R. 13).

In sum, the Court finds that the ALJ did not disregard Macias's Alcohol Abuse Disorder. Instead, the ALJ weighed contrary medical evidence and fully accounted for the limitations stemming from Macias's non-severe alcohol abuse. Accordingly, the Court finds no basis to overturn the ALJ's Decision on these grounds.

### C. *Chronic Liver Disease*

Macias argues that "[t]he objective medical evidence establishes that Macias is fully disabled and cannot perform medium work due to . . . his chronic liver disease." (ECF No. 22, p. 2). To support this contention, Macias asserts that "[o]n March 18, 2015, EHN . . . diagnosed Macias with . . . Hepatitis C" (*Id.* at p. 3) (citing (R. 374)) and "[o]n May and August 2018, FNP Karina Mosier diagnosed Macias with chronic Hepatitis C . . ." (*Id.*) (citing (R. 1342, 1345, 1518)). Further, Macias notes that he was diagnosed with chronic liver disease by Dr. Jesus Diaz "[o]n August 24, 2017," (*Id.*) (citing (R. 1381)) and by the SSA's Consultative Examiner, Dr. Roberta Herman (*Id.* at p. 4) (citing (R. 50-51)).

In response, the Commissioner argues that "the ALJ discussed [Macias's] non-severe chronic liver disease (hepatitis C) in the [R]ecord." (ECF No. 26, p. 5) (citing R. 12).

As state above, it is the province of the ALJ to weigh competing medical opinions. *See Taylor*, 706 F.3d at 602-03 ("[T]he determination of residual functional capacity is the sole responsibility of the ALJ."). "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Masterson*, 309 F.3d at 272 (citation and internal quotes omitted).

The Court notes that the ALJ made multiple findings in his decision regarding Macias's chronic liver disease. Specifically, the ALJ found that [b]y May of 2018, [Macias's] hepatitis C

was not detected." (R. 19) (citing R. 1384)).  Furthermore, the ALJ found that "liver function tests were within normal limits." (R. 19) (R. 1515-16)).  The ALJ also noted the state agency physician's prior administrative finding that Macias's hepatitis C was "non-severe." (R. 19).  Therefore, the ALJ found Macias's hepatitis C to be non-severe.

In sum, the Court finds that the ALJ fully accounted for the limitations stemming from Macias's chronic liver disease and hepatitis C.  Accordingly, the Court finds that the ALJ did not err in its consideration of the evidence relevant to Macias's chronic liver disease.

### D. *Anti-Social Personality Disorder*

Macias argues that "[t]he records also reflects that the ALJ erroneously diagnosed Macias with anti-social personality disorder." (ECF No. 22, p. 2).  To support this contention, Macias argues that the ALJ's "finding appears to be based on the mental status exam conducted by consultative examiner, James Shutte [sic], Ph.D[.], on January 2018[, but that] this note is based on a brief mental status exam that merely reflects anti-social personality traits and is not an actual diagnosis of a disorder."[4] (*Id.*) (citing R. 759-761).  Further, Macias asserts that "James Shutte [sic] is not a licensed medical doctor and may not be qualified to make [a] medical diagnosis."[5] (*Id.* at p. 2-3).  In short, Macias argues that "[a]lthough Macias may suffer from [anti-social personality disorder], there is no objective medical evidence of an actual diagnosis to support it." (*Id.* at p. 2).

---

[4] Macias does not provide, and the Court is unable to find, any legal support for Macias's position that there is a meaningful distinction between an official medical *diagnosis* of a psychological disorder and a *clinical finding* of "personality traits" of a psychological disorder.  *See* 20 C.F.R. § 404.1513(a)(3) (defining "other medical evidence" as "including judgments about the nature and severity of your impairments, your medical history, *clinical findings*, *diagnosis*, treatment prescribed with response, or prognosis . . .") (emphasis added).

[5] The Court finds, contrary to Macias assertion, that James Schutte, Ph.D., is a licensed psychologist, and therefore, that he is qualified to make psychological observations and diagnoses regarding psychological disorders like anti-social personality disorder. *See* 20 C.F.R. § 404.1513a.

Assuming, *arguendo*, that the ALJ did erroneously diagnose Macias with anti-social personality disorder, Macias does not articulate how this alleged misdiagnosis resulted in a less restrictive RFC determination than the one formulated by the ALJ.  The Court should "not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficienc[y] he alleges."  *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996); *see also Hall v. Berryhill*, No. CV 16-15485, 2017 WL 2385484, at *6 (E.D. La. May, 18, 2017) ("the Court is hard-pressed to see how Plaintiff was prejudiced by the ALJ's adoption of an RFC assessment that was *even more restrictive* than that of the consultative evaluator") (emphasis added) *report and recommendation adopted*, No. CV 16-15485, 2017 WL 2391068 (E.D. La. June 1, 2017).  Here, Macias has not articulated how the ALJ finding of anti-personality disorder has prejudiced him in any way.  Accordingly, the Court finds it cannot reverse the ALJ's Decision on these grounds.

### 2. *The ALJ Did Not Improperly Omit Medical Evidence*

Macias also argues that "without reweighing the evidence, there is ample evidence which support's Macias's position" that "[t]he ALJ merely omitted [a variety of] symptoms when determining Macias[]'s ability to bend, lift or carry."  (ECF No. 22, p. 4-5).  In addition to chronic liver disease and substance abuse discussed above, Macias lists a variety of symptoms and medical findings throughout the Record.  The Court will address each of these symptoms in turn.

First, Macias notes multiple times that Macias was diagnosed with major depressive disorder.  (ECF No. 22, p. 3) ("On March 18, 2015, Emergence Health Network ("EHN") diagnosed Macias with Major Depression, recurrent) (citing (R. 374)); (*id.*) ("On May and August 2018, FNP Karina Mosier diagnosed Macias with . . . chronic major depression . . . .") (citing (R.

1345, 1518-19))[6]; (*id.*) ("On November 2018, EHN again diagnosed Macias with Major Depression Recurrent) (citing (R. 1545)); (*id.* at p. 3-4) ("The SSA's Consultative Examiner[] Dr. Roberta Herman diagnosed Macias with . . . Depressive, Bipolar disorder.") (citing R. 51). However, even Macias recognizes in his own Brief that "[t]he ALJ found that Macias had the severe impairment of . . . major depressive disorder . . . ." (*Id.* at p. 2) (citing (R. 12)). The Court fails to see how the ALJ "omitted" symptoms of major depressive disorder when the ALJ found that Macias's major depressive disorder was a severe impairment. Therefore, the Court finds that Macias's arguments regarding Macias's major depressive disorder to be without merit.

Next, Macias notes that he was diagnosed with anxiety disorder. (*id.* at p. 3) ("On June . . . 2016, EHN diagnosed Macias with . . . Anxiety Disorder.") (citing (R. 491, 787, 902))[7]; (*id.*) ("On November 2018, EHN again diagnosed Macias with . . . Anxiety Disorder.") (citing (R. 1545)). However, Macias also recognizes in his own Brief that "[t]he ALJ found that Macias had the severe impairments of . . . anxiety . . . ." (*id.* at p. 2) (citing (R. 12)). Similar to Macias's arguments regarding his major depressive disorder, the Court finds that Macias's arguments regarding Macias's anxiety disorder to be without merit since the ALJ considered Macias's anxiety disorder as a severe impairment.

Further, Macias notes that "[o]n May 4, 2017, EHN's Determination of Medical Necessity reflects Macias'[s] depressed mood, inability to focus, forgetfulness, [and] thought disturbances . . . ." (*Id.* at p. 3) (citing (R. 597-99)). In fact, the ALJ noted that Macias had "reported that his depression caused a lack of energy, difficulty completing tasks, problems with decision-making,

---

[6] Contrary to Macias's contention, the Court notes that the Record indicates that the Karina Mosier diagnosed Macias with major depression in March, June, and August of 2018, not May and August of 2018, as Macias asserts in his Brief.
[7] Contrary to Macias's contention, the Court notes that the Record indicates that the EHN diagnosed Macias with "Anxiety disorder" on July 13, 2016 (R. 491, 902), and November 9, 2017 (R. 797), with an *onset* date of June 8, 2016.

11

trouble concentrating, and memory issues" as well as "a degree of distractibility and decreased concentration." (R. 17) (citing (R. 779, 1304, 1434, 1470)). While Macias has identified portions of the Record indicating relevant symptoms, he fails to explain how the ALJ "omitted" those symptoms or how the evidence weighs in favor of a more restrictive RFC determination than the one formulated by the ALJ. Therefore, the Court finds that Macias's arguments related to his depressed mood, inability to focus, forgetfulness, and thought disturbances to be without merit.

Finally, Macias continually references Macias's "GAF score."[8] *See* (ECF No. 22, p. 3) ("On March 18, 2015, EHN diagnosed Macias with . . . a GAF score of 50) (citing (R. 375)); (*id.*) ("On April 4, 2017, EHN diagnosed Macias with a GAF score of 45.") (citing (R. 580)); (*id.*) ("On June 2017, Dr. Sergio Rodarte assessed Macias'[s] GAF score at 45.") (citing (R. 1025)); (*id.*) ("On November 2018, EHN . . . diagnosed Macias with . . . a GAF score of 45) (citing (R. 1545)).

The governing Social Security regulation provides that disability decisions by any governmental agency or nongovernmental entity are not binding on the Commissioner because those decisions are made according to separate rules. 20 C.F.R. § 404.1504. The Commissioner does not need to "provide any analysis in [the] determination or decision about a decision made by any other governmental agency or nongovernmental entity about whether [the claimant is] disabled, blind, employable, or entitled to any benefits." *Id.* (binding all Social Security "claims *filed* . . . on or after March 27, 2017 . . . .") (emphasis added).

In the instant case, the amended version of 20 C.F.R. § 404.1504 governs because Macias filed for disability benefits on September 7, 2017. (R. 10). Therefore, the ALJ was not obligated

---

[8] A "GAF score" represents the patient's "Global Assessment of Functioning Score" as determined pursuant to "Axis V" of the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition ("DSM Five"). *See* (R. 374-75).

to give any weight or discuss the GAF score. Accordingly, the Court finds that the ALJ did not err in not discussing and not giving any weight to Macias's GAF scores.

In sum, Macias fails to identify any symptoms, medical opinions, or medical evidence that the ALJ did not consider properly in his Decision. Accordingly, the Court finds that there is no basis to overturn the ALJ's Decision based on these grounds.

### 3. *The ALJ Properly Considered the Medical Opinions*

Macias argues that the Fifth Circuit in *Frank v. Barnhart*, 326 F. 3d 618, 622 (5th Cir. 2003) warns against the ALJ "playing doctor" and making his or her own independent medical assessments. *See* (ECF No. 22, p. 5). Furthermore, Macias cites to *Newton*, in which the Fifth Circuit found that the ALJ "improperly" rejected the treating physician's medical opinions "without contradictory evidence from physicians who had examined or treated [the claimant] and without requesting additional information from the treating physician." *Newton v. Apfel*, 209 F. 3d 448, 460 (5th Cir. 200). Here, Macias argues that "the ALJ rejected the medical opinions of treating and examining doctors alike about the severity of Macias's medical conditions without contradictory evidence from a medical expert of any kind." (ECF No. 22, p. 6). However, as analyzed above, the ALJ either incorporated Macias's limitations or relied upon medical findings contrary to Macias's alleged limitations. (R. 13, 17, 19); *see Carrier v. Sullivan*, 944, F.2d 243, 247 (5th Cir. 1991) ("[T]he ALJ has primary responsibility for resolving conflicts in the evidence."). Accordingly, the Court finds that the ALJ did not "play doctor," but instead either incorporated Macias's limitations in his RFC determination or relied upon contrary medical records.

Further, Macias appears to be arguing that the treating physician's opinion should be given controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) (For claims filed before March 27, 2017, "[i]f

13

[the ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported . . . and is not inconsistent with the other substantial evidence . . . , [the ALJ] will give it controlling weight."). However, based on the amendment for claims filed after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1420c(a); *see* (R. 10) (Macias filed his claim on September 7, 2017).

Finally, Macias argues that "[t]he ALJ's RFC analysis failed to consider [Macias's] impairments alone and in combination as directed by 20 C.F.R. § 404.1523." (ECF No. 22, p. 4).[9] Code of Federal Regulations § 404.1523 involves the ALJ's analysis of severe impairments. In the instant case, the ALJ found severe impairments of "lumbar degenerative disc disease, major depressive disorder, anxiety, and an anti-social personality disorder." (R. 12). Further, the ALJ discussed Macias's chronic liver disease and substance abuse. *See* (R. 12-13). For Macias's chronic liver disease, the ALJ determined it was not severe due to "medical and other evidence establish[ing] only a slight abnormality or combination of slight abnormalities that would have no more than a minimal effect on [Macias's] ability to work." (R. 13) (citing 20 C.F.R. § 416.922; SSR 85-28). For Macias's substance abuse, the ALJ noted evidence of sobriety and treatment to support a finding that "[Macias's] substance abuse has not resulted in work related limitation; thus, it is a non-severe impairment . . . ." (R. 13).

---

[9] The Court notes that Macias exclusively quotes from caselaw related to the outdated 20 C.F.R. § 404.1527(d). As discussed above, Macias filed his claim on September 7, 2017, and therefore, the treating physician rule is not applicable to the instant case.

Further, Macias fails to identify how his assertion that "[t]he ALJ merely omitted the above noted symptoms when determining Macias's ability to bend, lift or carry"[10] (ECF No. 22, p. 4-5) supports a finding that Macias was prejudiced in any way. *See Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) (holding that the court should "not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficienc[y] he alleges."). The Court notes that the ALJ considered evidence including Macias's lumbar degenerative disc disease in formulating a medium exertion level. *See* (R. 16). Furthermore, as discussed above, Macias fails to identify any symptoms, medical opinions, or medical evidence that the ALJ did not discuss in his Decision.

Assuming, *arguendo*, that "[t]he ALJ omitted the above noted symptoms" as Macias asserts, Macias fails to make any showing that symptoms like anxiety, depression, or history of substance abuse would result in a more restrictive RFC determination than the ability to perform medium work as defined in 20 C.F.R. § 416.967(c).

In sum, the Court finds that the ALJ properly considered the medical evidence and opinions in the Record. Further, Macias has not articulated how the ALJ's consideration of the medical evidence and medial opinions prejudiced him in any way. Accordingly, the Court finds that there is no basis to overturn the ALJ's Decision based on these grounds.

---

[10] The Court notes that "lifting" and "carrying" are listed as two of the seven strength demands considered under an individual's *exertional* capacity. SSR 96-8p. However, the Court also notes that "bending" is not one of the seven strength demands. *See id.*

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's Decision denying benefits is supported by substantial evidence and therefore, is **AFFIRMED**.

**SIGNED** and **ENTERED** this 3rd day of June, 2021.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**